UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURREL CUNNINGHAM,

    Petitioner,                                    CASE NO. 2:09-12553
                                                    HONORABLE PAUL D. BORMAN
v.                                                   UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

    Respondent.
_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

      Durrel Cunningham, ("petitioner"), confined at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for armed robbery, M.C.L.A. 750.529. For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE**.**

**I. BACKGROUND**

      Petitioner was convicted of the above offense following a bench trial in the Wayne County Circuit Court. The trial court also acquitted petitioner of an assault with intent to commit murder charge. Petitioner was sentenced to seventeen years, six months to forty years in prison.     This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

At trial, evidence was presented that defendant called the complainant and arranged a meeting at his home, purportedly for the complainant to help defendant's friend with an insurance matter. The complainant saw the men arrive in defendant's vehicle. After the complainant let them in his home, defendant's companion hit the complainant and knocked him down. Defendant restrained the complainant while the other man wrapped his face, hands, and feet with duct tape. Defendant repeatedly hit the complainant in the head and demanded to know where his rings and guns were. The complainant heard sounds indicating that the other man was in the bedroom, and then felt two people going through his pockets. He could tell that defendant was holding him because defendant continued to talk. As defendant held the complainant from behind, the complainant felt his throat being cut twice. He believed that defendant cut him, but admitted that he was not sure. The men left, taking with them money from the complainant's two wallets. The complainant's injuries included a fractured cheek and he required surgery on his trachea.

The trial court found that defendant knew "who he was running with," why they went to the complainant's home, and "that they were going to have to beat him to take his stuff." The court did not resolve which perpetrator cut the complainant. The court stated that it could not find beyond a reasonable doubt that defendant intended to kill the complainant, commenting that "[i]f it was [defendant] who held the knife and intended to kill the victim, he would have finished the job right then and there." However, the court stated that there was no question that defendant committed an armed robbery.
*People v. Cunningham,* No. 281859, * 1-2 (Mich.Ct.App. December 23, 2008).

Petitioner's conviction was affirmed on appeal. *Id;, lv. den.* 483 Mich. 980; 764 N.W. 2d 246 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was deprived of his liberty without due process of law where the trial court committed reversible error where the armed robbery verdict was inconsistent with the not guilty verdict of acquittal for assault with intent to commit murder.

II. Petitioner was deprived of his liberty without due process of law where the trial court committed reversible error by scoring the sentencing guidelines based on materially false and inaccurate information; where trial counsel failed to object was ineffective.

II.     **STANDARD OF REVIEW**

2

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

**A. Claim # 1. The insufficiency of evidence/inconsistent verdict claim.**

Petitioner first claims that there was insufficient evidence to show that he aided and abetted in the commission of an armed robbery. Petitioner specifically claims that there was insufficient evidence presented to establish that he knew that his accomplice was in possession of a knife and that he intended to use it on the victim. In rejecting petitioner's claim, the Michigan Court of Appeals stated the following:

3

> The evidence showed that defendant and his companion both used force and violence against the complainant to commit a larceny. The complainant was cut with a knife, which allowed the trier of fact to infer that "in the course of committing the larceny," one of the men possessed a knife. Defendant performed acts, including restraining and striking the complainant, that assisted in the commission of the crime. Even if defendant did not use the knife, his willingness to restrain the complainant as his throat was cut suggests, at a minimum, that defendant knew that his companion intended to commit armed robbery. The evidence does not support defendant's argument that he sought to leave before the other man produced the knife. The complainant testified that he did not recall hearing one of the men say, "Let's get out of here."
> *People v. Cunningham,* Slip. Op. at * 2-3.

In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F. 3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* (*citing United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Therefore, even if a federal habeas court might have not convicted the defendant had it been the factfinder in the state court, it must uphold the verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Secondly, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *See also Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109

(2009)(citing 28 U.S.C. § 2254(d)(1)). The *Jackson* standard applies to bench trials, as well as to jury trials. *See Gilley v. Collins,* 968 F. 2d 465, 467 (5th Cir. 1992); *Gross v. Romanowski*, 2006 WL 3690923, *4 (E.D. Mich. December 12, 2006).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

Petitioner was convicted under a theory of aiding and abetting. To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.
> *Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(*citing People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission

5

of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992). Finally, the Michigan Supreme Court has held that there is no language in Michigan's aiding and abetting statute that shows an intent by the Michigan Legislature "to abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1, 9; 715 N.W. 2d 44 (2006)(*quoting* Perkins, Criminal Law (3d ed.), pp. 741-43, 745).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner,* 213 Mich. App. at 568-69.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted in the armed robbery, knowing that his accomplice was armed with a knife. The victim testified that petitioner's accomplice hit the victim and knocked him down. Petitioner restrained the victim while his accomplice wrapped the victim's face, hands,

and feet with duct tape. Petitioner repeatedly hit the victim in the head and demanded to know where his rings and guns were. The victim heard sounds indicating that the other man was in the bedroom, before feeling two people going through his pockets. The victim testified that he could tell that petitioner was holding him because he could hear petitioner talking. While petitioner held the victim from behind, the victim felt his throat being cut twice. Although the victim believed that petitioner cut him, he admitted that he was not sure. The two men then left with the victim's money. The evidence was sufficient for a rational trier of fact to conclude that petitioner knew that his accomplice was armed with a knife, because he was holding the victim down while the victim's throat was being cut twice by his accomplice. As the Michigan Court of Appeals indicated, even if petitioner did not use the knife, "his willingness to restrain the complainant as his throat was cut suggests, at a minimum, that defendant knew that his companion intended to commit armed robbery." *Cunningham,* Slip. Op. at * 2.

Because petitioner's accomplice was armed with a weapon in petitioner's presence, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted in an armed robbery. *See e.g. Whitmore v. Maggio,* 742 F. 2d 230, 232 (5th Cir. 1984)(evidence in armed robbery prosecution, including fact that accomplice brandished and fired pistol in defendant's presence before robbery, and that accomplice held victims at gunpoint, while defendant took money from store, was sufficient to sustain defendant's conviction on two counts of armed robbery, notwithstanding fact that he was not himself armed and allegation that he did not plan for accomplice to be armed). The Michigan Court of Appeals' determination that there was sufficient evidence to convict petitioner of armed robbery was an objectively reasonable application of clearly established federal law, where there was

7

compelling evidence that petitioner aided and abetted this crime. *See Dillard v. Prelesnik,* 156 F. Supp. 2d 798, 808-809 (E.D. Mich. 2001).

Petitioner further contends that there was insufficient evidence to establish that the victim was actually assaulted with a knife, because the prosecution failed to present testimony from a medical doctor or other medical personnel to establish that a knife was used to cut the victim's throat.

The victim testified that he felt his throat being cut twice. The victim testified that emergency medical services rushed him to the hospital, where he had emergency surgery performed on his trachea. Shawn Gailliard testified that when he observed the victim after the assault, his neck was slit from ear to ear and his skin literally hung down to his chest area. When the victim spoke, blood oozed out of his throat. The victim's testimony that his throat was cut twice and he had to be rushed to the hospital for emergency surgery on his trachea was sufficient to establish that a knife or other sharp object was used to establish the armed robbery conviction, notwithstanding the lack of corroborating evidence to establish that a knife was used. *See Polk v. State,* No. 2009 WL 3337650, * 2 (Tex.App. October 16, 2009)(sufficient evidence existed to support conviction for aggravated assault, even though there was no photographic or medical evidence presented to support victims' testimony that defendant assaulted them with a knife. The jury was entitled to accept the victims' testimony that defendant used a knife to assault them); *State v. Seefeldt*, 292 N.W.2d 558, 562 (Minn. 1980) (although victim did not actually see weapon used, testimony that it was sharp and pointed like knife and that she believed it was a knife, coupled with evidence of minor wounds, was sufficient to sustain conviction for assault with dangerous weapon); *Evans v. U.S.,* 442 F.2d

8

1031, 1032 (10th Cir. 1971)(testimony by one witness that defendant had possession of knife during scuffle together with testimony showing that victim was indeed stabbed and required medical treatment was adequate circumstantial evidence to establish assault with knife by defendant and it was not necessary that knife itself be found and produced at trial for proof of its existence).

Finally, petitioner argues that the trial court judge rendered an inconsistent verdict by finding him guilty of armed robbery but not guilty of assault with intent to commit murder.

Inconsistency in a verdict is an insufficient reason for setting a verdict aside. *Harris v. Rivera,* 454 U.S. 339, 345 (1981); *See also Dunn v. United States,* 284 U.S. 390 (1932)*; Mapes v. Coyle*, 171 F. 3d 408, 419-20 (6th Cir. 1999). The possibility that an inconsistent verdict may favor a criminal defendant as well as a prosecutor "militates against review of such convictions at the defendant's behest." *United States v. Powell,* 469 U.S. 57, 65 (1984). The fact that an inconsistent verdict might be the result of lenity on the part of the factfinder, coupled with the fact that the prosecutor is unable to obtain appellate review of a conviction, "suggests that inconsistent verdicts should not be reviewable." *Id.* An inconsistent verdict by a trial judge sitting as a trier of fact provides no greater grounds for reversal of a conviction than an inconsistent verdict reached by a jury. *United States v. Chilingirian,* 280 F. 3d 704, 711 (6th Cir. 2002). Any alleged inconsistency in a state court verdict is therefore a non-cognizable claim on federal habeas review. *Smith v. Herbert,* 275 F. Supp. 2d 361, 371 (E.D.N.Y. 2003). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The sentencing guidelines/ineffective assistance of counsel claims.**

In his second claim, petitioner contends that the trial court used inaccurate information

9

in scoring Offense Variables (OV) 1, 2, 3, 7, and 10 and Prior Record Variable (PRV) 5 of the Michigan Sentencing Guidelines. Petitioner further contends that trial counsel was ineffective for failing to object to the improperly scored sentencing guidelines.

In the present case, petitioner's sentence of seventeen years, six months to forty years was within the statutory limits for the offense of armed robbery. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment either. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000); *Johnson v. Smith,* 219 F. Supp. 2d 871, 884 (E.D. Mich. 2002).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Petitioner's claim that the sentencing guidelines were incorrectly scored fails to state a claim upon which habeas relief can be granted. *Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Because petitioner's sentence falls within the statutory limits, petitioner is not entitled to habeas relief. *Robinson v. Stegall,* 157 F. Supp. 2d at 823. Moreover, because petitioner has

failed to claim that the sentence imposed violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, he has failed to state a claim upon which habeas relief can be granted. *Id.*

The Court will also reject petitioner's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988). "[A] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States,* 178 F. 3d 778, 788 (6th Cir. 1999). To establish a claim of ineffective assistance of counsel in the sentencing context, a defendant must show that:

> 1. counsel's representation fell below the objective standard of reasonableness; and;
> 2. there is a reasonable probability that, but for counsel's unprofessional errors, the result of the sentence would have been different.

*United States v. Harris,* 894 F. Supp. 20, 26 (D.D.C. 1995).

A trial counsel's failure to object to the improper application of the sentencing guidelines may amount to the ineffective assistance of counsel. *United States v. Burnett,* 55 F.

11

Supp. 2d 410, 413 (D.S.C. 1999)(internal quotation omitted). "It follows that there can be no ineffective assistance without an improper application of the guidelines." *Id.* Counsel is not ineffective for failing to make a legally untenable objection to the sentencing guidelines. *See Riza v. United States,* 933 F. Supp. 331, 335 (S.D.N.Y. 1996).

In the present case, the Michigan Court of Appeals rejected petitioner's sentencing guidelines claim, finding that OVs 1, 3, 7, and 10 were properly scored. *Cunningham,* Slip. Op. at * 3. The Michigan Court of Appeals declined to resolve the scoring of OV 2 and PRV 5, because even if these two variables had been scored at zero points, petitioner's OV and PRV levels would have remained the same and would not have affected petitioner's sentencing guidelines range of 135-225 months. *Id.* at * 4. Because petitioner's challenges to the sentencing guidelines lacked merit or would not have affected his sentencing guidelines range, the Michigan Court of Appeals concluded that any objection by counsel would not have changed petitioner's sentence, so as to establish that petitioner had been deprived of the effective assistance of counsel. *Id.*

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals determined that OVs 1, 3, 7, and 10 were properly scored. This Court cannot question that determination on habeas review. Because petitioner has failed to show that his counsel acted deficiently with respect to the scoring of these guidelines variables, his ineffective assistance of counsel claims fails. *See Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 911 (E.D. Mich. 2006).

With respect to the scoring of OV 2 and PRV 5, the Michigan Court of Appeals determined that the sentencing guidelines range would not have changed even had these variables been scored at zero points. In light of the fact that petitioner's sentencing guidelines range would not have changed even if OV 2 and PRV 5 had been properly scored, petitioner was not prejudiced by counsel's failure to object to the allegedly incorrect scoring of these variables under the sentencing guidelines. *See U.S. v. Pomales*, 268 Fed. Appx. 419, 423-24 (6th Cir. 2008). Petitioner is not entitled to habeas relief on his second claim.

**C. The reply brief.**

Petitioner has filed a motion for extension of time to file a response to respondent's answer, along with "Petitioner's Objection to Attorney General's Answer to Petition for Writ of Habeas Corpus", which is essentially a reply to the respondent's answer.

It is unnecessary for petitioner to obtain an extension to file his reply brief. The order of responsive pleadings that was signed on July 27, 2009 gave petitioner forty five days from the date of the responsive pleading to file a reply brief. The respondent filed his answer on January 11, 2010. Petitioner's objection to the answer was filed with this Court on February 25, 2010, which was forty five days after the answer was filed. Petitioner does not need an extension of time to file his reply brief.

Petitioner does indicate at pages 4 and 5 of his reply brief that he "seeks an opportunity to present his actual innocence claim." It is unclear whether petitioner is referring again to his sufficiency of evidence claim or whether he is attempting to raise a new claim. To the extent that petitioner is seeking to raise a new claim that was not raised in his initial habeas petition, a traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading

13

for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.* To the extent that petitioner raises a new claim involving his actual innocence for the first time in his reply brief, rather than in his habeas petition, this Court declines to address this claim, because it is not properly before this Court. *See Murphy v. Ohio*, 551 F. 3d 485, 502 (6th Cir. 2009); *cert. den.* 130 S. Ct. 397 (2009); *See also Tyler v. Mitchell,* 416 F. 3d 500, 504 (6th Cir. 2005). [1]

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of

---

[1] Petitioner would not be entitled to habeas relief even if this claim was properly before the Court. A free-standing actual innocence claim is not cognizable upon federal habeas review. *See Cress v Palmer*, 484 F 3d 844, 854 (6th Cir. 2007).

appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 10, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 10, 2010.

s/Denise Goodine
Case Manager